IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| SANITA CHEATHAM, | * | |
| Plaintiff, | * | |
| v. | * | CV 116-104 |
| AUGUSTA-RICHMOND COUNTY GEORGIA, | * | |
| Defendant. | * | |

**O R D E R**

Presently before the Court is Defendant's motion to dismiss. Plaintiff, Sanita Cheatham, alleges that Defendant, the City of Augusta, violated the Family Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA") when it took adverse action against her after she took leave to undergo medically necessary surgery. Defendant's motion to dismiss argues that Eleventh Amendment sovereign immunity bars the application of the FMLA and that Plaintiff failed to plead sufficient facts to state a plausible claim under the ADA. Because Eleventh Amendment immunity does not apply to local municipalities, and because Plaintiff has alleged sufficient facts to state a plausible claim for relief, the Court **DENIES** Defendant's motion.

## FACTS

Defendant hired Plaintiff in 2008 as a Communications Officer at its 911 Call Center, and for six years the parties maintained a working relationship. At some point, however, their relationship soured. Shortly after Plaintiff informed Defendant that she would need time off to undergo surgery, Defendant demoted Plaintiff and reduced her pay. Plaintiff alleges that Defendant demoted her because she required time off to tend to her medical issue. She claims that she requested multiple days off between March and June of 2014 and that Defendant knew she had an ongoing medical problem. She also alleges that the parties' six years together lapsed without any formal write-up or reprimand by Defendant. Unsurprisingly, Defendant's recollection differs. Defendant claims that it knew nothing about Plaintiff's ongoing medical problems and that it did issue at least one write-up or reprimand to Plaintiff. It also claims that Plaintiff's demotion was related to a reduction in work force stemming from a major change in technology that lessened the need for Plaintiff's position.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 556 U.S. 544, 570 (2007)). Applying this standard requires a

2

two-part test. See id. at 679. First, the Court asks whether the plaintiff has stated specific facts supporting a claim rather than mere legal conclusions. Id. Second, it asks whether those facts might plausibly give rise to a right to relief. Id. at 680.

The first prong of the inquiry requires that the plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. While the Court must accept as "true all of the allegations contained in a complaint," it must not "accept as true a legal conclusion couched as a factual allegation." Id. Generalized conclusions and "bare allegations" will not allow the plaintiff to "unlock the doors of discovery." See id. The plaintiff must assert specific facts that "show" the defendant's misconduct. Id. at 679.

Once the Court separates the specific factual allegations from mere legal conclusions, it must accept those facts as true and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Well-pleaded facts cannot be merely consistent with the alleged misconduct; they must allow the Court to infer that such misconduct was plausible. Id. at 678. Thus, facts which show only the

3

possibility of misconduct are not enough. Id. The complaint must allege facts that push the claim "across the line from conceivable to plausible." Id. at 683.

Finally, while a plaintiff does not have to "allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007)(quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

**DISCUSSION**

**A. FMLA Claim**

Defendant's first argument for dismissal asserts that the Supreme Court's decision in Coleman v. Court of Appeals of Maryland, 132 S.Ct. 1327 (2012), makes it immune from suits for money damages under the FMLA self-care provision. Specifically, Defendant argues that it, like the State, is protected from suit by Eleventh Amendment immunity. Defendant is mistaken.

Sovereign immunity is a principle of power. It originates from the idea in English common law that the Crown could not be sued in its own courts without its consent. Alden v. Maine, 527 U.S. 706, 715 (1999). The king could not be sued without his consent because "all jurisdiction implies superiority of power,"

4

and the king was the supreme power. Thus, only the king could subject himself to himself or, more specifically, his courts. Id.

While sovereign immunity in American jurisprudence is commonly connected with the Eleventh Amendment, its existence in the federal structure of government predates the amendment's ratification. Alden, 527 U.S. at 713. In the founding era, the American people universally agreed that every State enjoyed the privilege of sovereign immunity. Id. at 715. Because the federal government was one of limited and enumerated powers which were to be exercised concurrently with the expansive and innumerate powers of the States, the design of the Constitution did nothing to eliminate the sovereign immunity of the several States. Id. at 713-14. Thus, when the people ratified the Constitution, they did so with the understanding that the States retained their immunity as co-sovereigns under the federal design of the Constitution. Id. at 714.

Merely five years after the Constitution's ratification, however, this principle was put to the test. In Chisholm v. Georgia, 2 U.S. 419 (1793), the Supreme Court declared that Article III authorized a private citizen of another state to sue the state of Georgia without its consent. The country responded with a vigor commensurate to the independent spirit of our founding generation. The day after the Court announced the Chisholm decision, the Georgia Legislature passed a bill

5

"providing that anyone attempting to enforce the Chisholm decision would be 'guilty of felony and shall suffer death, without benefit of clergy, by being hanged.'" Alden, 527 U.S. at 720-21 (quoting D. Currie, The Constitution in Congress: The Federalist Period 1789-1801, p.196 (1997). Not to be outdone, however, Congress, with near unanimity and <u>in less than three months</u>, voted on and proposed for ratification to the States the Eleventh Amendment. Id. at 721. The States eventually ratified the Eleventh Amendment, which provided that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

The Eleventh Amendment, however, did not redefine federal judicial power; it merely informed the Supreme Court that it misread the Constitution. Because of the rapidity with which the American people ratified the Eleventh Amendment and the historical evidence supporting the State's retention of sovereign immunity under the Constitution's design "[t]he Eleventh Amendment confirmed, rather than established, sovereign immunity as a constitutional principle." Alden, 527 U.S. at 728-29. Thus, "sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself." Id. at 728.

But neither the Eleventh Amendment nor the original structure of the Constitution reject the principle that a sovereign may subject itself to suit by its own consent. States may consent to suit by state statutes or changes to our constitutional structure. Alden, 527 U.S. at 755. Such was the case when the people ratified the Fourteenth Amendment: "[I]n adopting the Fourteenth Amendment, the people required the States to surrender a portion of the sovereignty that had been preserved to them by the original Constitution, so that Congress may authorize private suits against nonconsenting States pursuant to its § 5 enforcement power." Id. at 756. Thus, "[w]hen Congress enacts appropriate legislation to enforce this Amendment, federal interests are paramount, and Congress may assert an authority over the States which would otherwise be unauthorized by the Constitution." Id. (internal citations omitted).

In Coleman, the Supreme Court answered the question of whether Congress exceeded its powers under the Fourteenth Amendment when it attempted to allow money damages suits against states under the FMLA's self-care provision. 132 S. Ct. at 1327. The Court held that because the self-care provision did not "identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations," it could not properly "abrogate the States immunity from suits for damages under § 5 [of the Fourteenth Amendment]." Id. at 1338. Thus, the Court declared that States are immune

7

from suits for money damages under the FMLA's self-care provision. Id.

The Court did not hold, however, that counties, municipalities, and lesser government entities were also immune from suit for money damages under the FMLA's self-care provision. Rather, the Supreme Court has consistently declared that sovereign immunity does not extend to units of local government. Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 369 (2001)("[T]he Eleventh Amendment does not extend its immunity to units of local government."); Alden, 527 U.S. at 756 ("The second important limit to the principle of sovereign immunity is that it bars suits against States but not lesser entities. The immunity does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State."); Jinks v. Richland County, 538 U.S. 456, 466 (2003) ("[M]unicipalities, unlike States, do not enjoy a constitutionally protected immunity from suit.").

This case is no different. Because the City of Augusta is a local government and not an arm of the state, it does not enjoy the protections of Eleventh Amendment immunity. Thus, it is not protected from application of the FMLA. Therefore, the Court **DENIES** Defendant's motion to dismiss on this count.

## B. ADA Claim

Defendant's next argument is that Plaintiff failed to provide sufficient facts to allege a plausible claim that

Defendant discriminated against her under the ADA. Specifically, Defendant argues that Plaintiff fails to sufficiently allege that she either 1) was perceived to have a disability or 2) had a disability. The Court disagrees.

42 U.S.C. § 12112(a) provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, . . . and other terms, conditions, and privileges of employment." A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "Disability" is "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1)(A)-(C). "[B]eing regarded as having such an impairment" is further defined as establishing that one "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

Similarly, 29 C.F.R. § 1630.4(a)(1), which is a part of the regulations published pursuant to 42 U.S.C. § 12112, provides

9

that "[i]t is unlawful for a covered entity to discriminate on the basis of disability against a qualified individual in regard to . . . demotion, transfer, layoff [or] termination . . . ." It defines "disability" in accordance with § 12102, but it further states that an individual may make a claim based on any or all of the disability prongs listed in § 12102. Moreover, a person does not have to show an actual impairment that substantially limits a major life activity if she is proceeding under the claim that her employer has regarded her as having a disability. 29 C.F.R. § 1630.2(g)(3).

Defendant argues that Plaintiff has no claim because she did not allege that she had an actual disability. Defendant's argument fails, however, because Plaintiff did not have to allege a disability to make a claim under the ADA. Plaintiff may allege a physical or mental impairment, a record of impairment, or that she was regarded as having an impairment. If she claims her employer regarded her as having an impairment, she does not have to provide proof of her disability. Here, Plaintiff alleges that Defendant demoted her because it regarded her as having an impairment. Plaintiff provides specific facts about her medical issues, that she had to take time off to address those medical issues, and that Defendant took an adverse employment action very soon after learning of her need for time off. These allegations are sufficient to state a plausible claim that Defendant regarded Plaintiff as having an impairment and discriminated against her

10

because of her perceived impairment. Thus, Plaintiff has stated a plausible claim under the ADA.

Moreover, Plaintiff has alleged sufficient facts to make a plausible claim for an impairment in addition to her claim of being regarded as having an impairment. To have an impairment which qualifies as a disability, the impairment must "substantially limit one or more major life activities." When determining if the impairment "substantially limits," 29 C.F.R. § 1630.2(j) instructs the Court that "the term 'substantially limits' shall be construed broadly in favor of expansive coverage"; "that it is not meant to be a demanding standard"; that it "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be substantially limiting"; and that "whether an impairment 'substantially limits' a major life activity should not demand an extensive analysis." When determining what "major life activities" have been impaired, "the term 'major' shall not be interpreted strictly to create a demanding standard for disability." 29 C.F.R. § 1630.2(i)(2). "Major life activities include "reaching, lifting, . . . , interacting with others, . . . the operation of a major bodily function, including function of the immune system, special sense organs and skin; [and] normal cell growth . . . ." Id. at § 1630.2(1)(i)-(ii).

When combined with the lenient factual standard required at the motion to dismiss stage, the broad definition of

11

"substantially limits" gives Plaintiff a very low bar to cross at this stage of the litigation, and Plaintiff easily crosses it. Plaintiff alleges that she had an impairment in the form of a medical problem that required her to miss multiple days of work for testing, surgery, and recovery. Her first amended complaint alleges that the surgery was cancer related, which would qualify as affecting "the operation of a major bodily function" and "normal cell growth." Because cancer directly affects normal cell growth, it qualifies as a substantial limitation under the very lenient standard set forth in the regulation. Therefore, the Court finds that Plaintiff's allegations are sufficient to allow this claim to proceed further. Defendant's motion to dismiss the ADA claim is **DENIED**.

## CONCLUSION

For the reasons mentioned above, the Court **DENIES** Defendant's motion to dismiss. (Doc. 4).

**ORDER ENTERED** at Augusta, Georgia, this ___ day of January, 2017.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA